LYNCH v. VAL BLATZ BREWING CO.

1. LANDLORD AND TENANT—INTOXICATING LIQUORS—ILLEGALITY OF
    LEASE—RENT.
    Under a lease of a building to a brewing company which
    made a practice of subleasing to various tenants for
    saloon purposes, providing as a part of the contract that
    the brewing company might surrender the lease if it
    should be prevented by any statute or law or authori-
    tative order from using the premises for saloon pur-
    poses, it was insufficient to authorize the lessee to
    terminate such contract that its sublessee was refused a
    license to engage in the retail liquor business on the
    premises by the city council. The risk of being able to
    procure a proper sublessee was on the tenant.

2. SAME—STATUTES—BREWING COMPANIES.
    Act No. 1, Second Extra Session 1912 (2 How. Stat. [2d
    Ed.] § 5056), prohibiting brewing companies and other
    wholesale dealers from owning the license of retail deal-
    ers or controlling their business did not render illegal
    such lease, which was executed prior to the enactment
    of the statute.

Error to Houghton; O'Brien, J. Submitted Janu-
ary 16, 1914. (Docket No. 173.) Decided March 26,
1914.

Assumpsit by Eugene R. Lynch against Val Blatz
Brewing Company of Michigan for rent. Judgment
for plaintiff. Defendant brings error. Affirmed.

*J. F. Hambitzer*, for appellant.

*Burritt & Burritt*, for appellee.

OSTRANDER, J. The action was begun September
23, 1912, by the assignee of the lessors against the
lessee to recover the rent reserved in a certain lease.
The term created by the lease is three years from

and after May 1, 1911, with a possible two years in addition thereto. There is a stipulation in the lease that the property shall be used as a saloon and dwelling, but in no case used for any immoral or illegal purpose, or for any business deemed extra hazardous on account of fires, and a mutual stipulation that—

"Should said second party be prevented, by reason of any statute or law, or authoritative order, from using the said premises for the purpose of a saloon, as above provided, then the said second party reserves the right to surrender this lease, and have its obligations therein contained become null and void."

There is no provision forbidding subletting or assigning the lease. Defendant gave notice, with its plea: That it would show in its defense that it had a tenant of the premises who conducted a saloon therein to May 1, 1912. That it made efforts to secure another tenant for the year beginning May 1, 1912.

"That a report became current, and it was remarked by certain of the aldermen of the city of Hancock, in which said premises are situated, that no saloons be permitted in said building, and parties feared making an application therefor, for fear that their application would be rejected if a license were applied for to conduct a saloon business in said premises, and therefore said William Lepisto declined making application therefor, but made application for a license to conduct a saloon on Quincy street in said city of Hancock. That on the 17th day of April, the defendant, by its vice president, wrote a letter to Hannah and George Rice, the owners of said premises, then residing in Eagle Harbor, Mich.. reading as follows:

" 'Referring to lease made with you under date of April 10, 1911, and which expires May 1, 1914, covering premises as follows: The two-story frame, composition-roofed building and its additions, adjoining and communicating, situate upon the south one-quarter of lot number twenty (20) of block number eight (8) of the village (now city) of Hancock, wish to say that as

we are advised, no license will be granted for the stand after April 30th, and we therefore will surrender possession of the premises on that date. Kindly asking you to be governed accordingly, and acknowledge receipt hereof, we remain.'"

That, after sending this letter, defendant was informed by the owners of the premises, the lessors, that it had been received, and "that it was all right," and, after defendant had surrendered the property, the owners and lessors arranged with tenants occupying a portion of the building to remain therein and gave defendant written permission to store certain bar fixtures therein, without charge, until May 10, 1912. That thereafter defendant induced one Polsich to make application on or about May 15, 1912, for a license to conduct a saloon in said premises, and the application was made and rejected. That the lessors, after the surrender of the premises by defendant, requested an agent of defendant to procure a tenant. Lastly, defendant's plea contains the following:

"The defendant will also offer in evidence that it is engaged in the manufacturing and selling of beer, and has branch offices in several points in Michigan, one of which is in Hancock, and that it leases buildings for saloon purposes from owners of such buildings, and sublets such buildings to customers who are engaged in the saloon business, and that the provision authorizing a surrender and cancellation of such leases was inserted in such leases for the protection of the defendant in case it is unable to secure tenants for such buildings by reason of being prevented by statute or authoritative law, and such fact was well known to the lessors, Hannah and George Rice, and that by reason of the action of Dennis Holland, the former tenant, not having made application within the time specified by law for making application for a liquor license, and by reason of the failure of said William Lepisto making application for a liquor license to conduct a saloon in said premises, and by reason of the common council of the city of Hancock having rejected the application of said Joseph Polsich for a license to conduct a business in said premises,

and by reason of the said common council or the aldermen of said city of Hancock being opposed to granting a license for conducting a saloon in said premises, the said defendant was unable to secure a tenant therefor, although it used every effort so to do."

Testimony was introduced from which it appears that defendant is a manufacturer and wholesaler of beer, and that at the time of the occurrences in question it rented buildings from various owners, and sublet them to its customers for saloon purposes. The trial judge was of opinion that the defendant was not in law prevented from subletting the premises for a saloon; that it was not, under the undisputed evidence, in fact prevented by any statute or authoritative order from so using the premises at the beginning of the 1912 liquor year; that its failure to get a tenant did not relieve it from liability to pay rent; and that, having no legal right to surrender the lease, it was liable to pay the rent, unless there was a mutual agreement between lessor and lessee that there be a surrender. *Stewart* v. *Sprague,* 71 Mich. 50 (38 N. W. 673). He found no mutual agreement for a surrender of the lease had been proven. He was further of opinion that Act No. 1, passed at the second extra session of 1912, in effect July 9, 1912, which forbids a concern like the defendant to assist retail saloon keepers in certain ways, had no effect upon contract relations established and existing in April and May, 1912. He expressly construed the lease, in view of all conditions, to mean, not that the defendant should itself conduct a saloon upon the premises which, having a wholesale license in the district, it could not lawfully do, but as meaning and intended to provide for the subletting of the premises by defendant for saloon purposes. These views required that a verdict be directed, and the jury was instructed to return a verdict for plaintiff for $325, being the rent from May 1, 1912, to September 23, 1912; interest being waived.

The argument of appellant which is most plausible is the one that, having found that under all the circumstances it was the understanding of the parties to the lease that defendant leased the premises for the purpose of subletting them, and not for the purpose of itself conducting a saloon, the court should have determined, upon like reasoning, that, if for any reason defendant could not sublet the premises for saloon purposes, the mutual stipulation referred to permitted defendant to surrender the premises and the term. But it will be perceived that the stipulation is not to this effect, and is to the effect that, if defendant is prevented from using the premises for a saloon by any statute, law, or authoritative order, there may be a surrender. The risk of being able to secure a proper sublessee is assumed by defendant.

Appellant invokes the doctrine that, if a contract is legal when made, and the performance of it is rendered illegal by a subseqeunt law, the parties thereto are discharged from its obligations. *Gray* v. *Sims,* Fed. Cas. No. 5,729; *Heart* v. *Brewing Co.,* 121 Tenn. 69 (113 S. W. 364); *Hickey* v. *Sciutto,* 10 Brit. Col. Law Rep. 187. The application of the doctrine attempted is that after July 9, 1912, when the act of the extra session became effective, defendant's obligation to pay rent was discharged. It is not made very clearly to appear what the relations of defendant to its sublessees usually were, and not at all clear what relations it sought or proposed to establish with its sublessees for the year 1912. But it is not claimed there was any law forbidding the use of the premises for a saloon, nor that the contract restricts the use to sales of intoxicating liquors.

We think the trial court was right as to each of the conclusions stated, and therefore affirm the judgment.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.